1
2
3
4
5
6
7

8          **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   GARY ULRICH EICKERMAN,                    CASE NO. CV-F-12-618  LJO

12                    Appellant,              **ORDER ON BANKRUPTCY APPEAL**
                 vs.
13
     LA JOLLA GROUP, II,
14
                    Appellee.
15   _____/

16

17                          **INTRODUCTION**

18        Appellant Gary Ulrich Eickerman ("Mr. Eickerman") appeals an order of the United States

19   Bankruptcy Court for the Eastern District of California ("bankruptcy court") granting summary judgment

20   in favor of appellee La Jolla Group, II ("La Jolla') and against Mr. Eickerman.  Mr. Eickerman raises

21   four issues on appeal challenging the bankruptcy court's determination that La Jolla's post-confirmation

22   attorneys' fees and expenses were not "provided for" in the chapter 13 plan to allow La Jolla to enforce

23   those pre-petition rights after discharge of the plan.  Mr. Eickerman also criticizes the bankruptcy court

24   for failing to determine the reasonableness of attorneys' fees on summary judgment.  La Jolla argues that

25   the bankruptcy court properly concluded that post-confirmation fees and expenses were not provided

26   for under the plan, and payment of the amount statement in La Jolla's proof of claim did not constitute

27   satisfaction of the debt incurred after confirmation.  For the reasons discussed below, this Court

28   AFFIRMS the decision of the bankruptcy court.

                                    1

### Background[1]

### The Underlying Obligation

The bankruptcy court correctly noted that this "hotly contested dispute is best understood in the context of the long and litigious relationship between the parties." Memorandum Decision Regarding Cross-Motions For Summary Judgment, dated March 22, 2012 ("MSJ Order"), p. 3.

Mr. Eickerman has owned and operated a restaurant business on real property located in Selma, California (the "Restaurant") for many years prior to the bankruptcy as issue in this action.  In April 1994, Mr. Eickerman and his wife Wonetta Eickerman (collectively "the Eickermans") executed an all-inclusive promissory note in favor of La Jolla in the amount of $110,000.00 ("the Note").  The Note bore interest at 12% per annum, was payable in monthly installments of $1,100, and was to mature in May 1999.  On the maturity date, any unpaid principal balance and accrued interest became due.

In addition to the payments for principal and interest, the Note contained two other contractual provisions relevant to this appeal.  First, the Note contained a provision relating to late payment penalties, which read: "In the event of non-payment of any installment within 10 days of the date due, payor [Eickerman] agrees to pay the holder [La Jolla] hereof a late payment charge equal to 6% of said installment."  The Note also included a provision for the award of attorneys' fees in the event of a successful action to enforce the Note or to collect any payments.  The provision read:

> If any party to this Note or any assignee of any party hereunder shall bring an action in any court of competent jurisdiction to enforce any covenant or condition of this Note, including any action to collect any payments required hereunder, it is hereby mutually agreed that the prevailing party shall be entitled to reasonable attorney's fees and all costs and expenses in connection with said action, which sums shall be included in any judgment or decree entered in such action in favor of the prevailing party.

When the Note matured in 1999, the Eickermans failed to pay off the balance.  The Note went into default and La Jolla commenced foreclosure proceedings.

### First Chapter 13 Action

The Eickermans filed a chapter 13 petition in February 2000 ("First Chapter 13").  M. Nelson Enmark ("Mr. Enmark") was appointed as the chapter 13 trustee.  The schedules in the First Chapter 13

---

[1]Unless otherwise noted, the facts are undisputed and are derived from the record presented and the factual background of the order on the cross-motions for summary judgment, the order from which this appeal is taken.

1   declared the value of the Restaurant to be $350,000 and showed La Jolla as having an oversecured claim.

2   La Jolla filed a proof of claim in the amount of $99,498.43.   The Eickermans confirmed a plan over La

3   Jolla's objection that provided full payment of La Jolla's claim through the plan's 60-month term.   In

4   June 2002, Mr. Enmark moved to dismiss the case because the Eickermans were more than three months

5   behind on their plan payments.   The defaults were left uncured, resulting in dismissal of the case in July

6   2002.   The last payment La Jolla received from Mr. Enmark pursuant to the First Chapter 13 plan was

7   in March 2002.

8                            **Second Chapter 13 Action**

9         Less than one month after the dismissal of the First Chapter 13, Mr. Eickerman filed a second

10  chapter 13 case ("Second Chapter 13") without naming his wife as a joint debtor.   The current appeal

11  is taken from an adversary proceeding in this Second Chapter 13.   Mr. Enmark was again appointed as

12  the standing trustee.   La Jolla filed proof of its secured claim in the amount of $72,500 (the "Proof of

13  Claim").   In its Proof of Claim, La Jolla estiamted the value of its collateral to be $110,000.   In his

14  schedules, Mr. Eickerman estimated the value of the Restaurant to be $350,000.   Mr. Eickerman's

15  second amended plan was confirmed on July 3, 2003 ("the Plan").

16        The Plan was approved over La Jolla objections and after the bankruptcy court denied La Jolla's

17  concurrent motion for relief from the automatic stay ("First 362 Motion").   La Jolla sought relief from

18  the automatic stay in the First 362 Motion based on its position that Mr. Eickerman's total obligation

19  to La Jolla as of June 10, 2003 had increased from the amount stated in the Proof of Claim, because of

20  attorneys fee's fees and insurance advances.   La Jolla declared that as of June 10, 2003, Mr. Eickerman

21  owed La Jolla $88,176.27.   Although this amount was stated in support of the First 362 Motion, at no

22  time did La Jolla amend its Proof of Claim to include the additional fees and expenses referred to in that

23  motion.

24        Mr. Eickerman's Plan was the form chapter 13 plan of the Eastern District of California.   The

25  district's form in effect at the time was Form EDC 3-080 (revised March 1, 2001).   The Plan obligated

26  Mr. Eickerman to make monthly payments to Mr. Enmark in the amount of $2,423 for a term of 60

27  months.   La Jolla's claim was provided for in Class 2 of the Plan, intended for "[s]ecured claims that

28  are modified by this plan or that will not extent beyond its length."   La Jolla was supposed to recrive a

                                            3

monthly distribution from Mr. Enmark in the amount of $1,613 during the full 60-month term.  The claim, stated in the claim to be $72,500, was to be paid in full with interest at the rate of 12%.

Mr. Eickerman defaulted on his Plan payments several times after confirmation, causing Mr. Enmark to bring three motions to dismiss.  The first motion to dismiss, filed in February 2004, was based on a declaration by Mr. Enmark declaring that Mr. Eickerman was three months behind on his Plan payments.  Mr. Eickerman did not respond to Mr. Enmark's motion.  That motion was withdrawn at the hearing.  Mr. Enmark filed a second motion to dismiss in June 2004, based on Mr. Eickerman again being two months delinquent in his Plan payments.  Mr. Enmark again withdrew the second motion to dismiss at the hearing although Mr. Eickerman did not respond.

The third motion to dismiss was filed in October 2004.  Mr. Enmark declared that Mr. Eickerman was again in default of his Plan payments by three months.  At the October 19, 2004 hearing on the third motion to dismiss, the motion was withdrawn subject to a condition that the case would be dismissed on Mr. Enmark's ex parte application if Mr. Eickerman defaulted again in the next twelve months.

In January 2005, La Jolla filed its second motion for relief from the automatic stay ("Second 362 Motion").  The Second 362 Motion was based on Mr. Enmark's payment record; specifically, that Mr. Enmark failed to make Plan payments in November and December 2004 in a timely manner notwithstanding the court's ruling at the October 2004 hearing.  La Jolla argued that Mr. Enmark was not enforcing the Plan, since Mr. Enmark had not moved to dismiss the action even though Mr. Eickerman continued to make his payments in an untimely manner.

The bankruptcy court settled La Jolla's Second 362 Motion by a protection order which provided La Jolla with ex parte relief from the automatic stay upon any further default in Plan payments by Mr. Eickerman.  The protection order did not include an award of attorney's fees.  That order was filed on February 24, 2005.

In February 2007, Mr. Enmark filed his preliminary final report indicating that the Plan had been completed and that sufficient funds had been distributed over the term of the Plan to pay La Jolla's Proof of Claim in full.  La Jolla had received $72,500 on account of principal and $25,294.75 in interest for a total of $97,794.75.  There were no objections to Mr. Enmark's final report.  Accordingly, the court entered Mr. Eickerman's discharge and the Second Chapter 13 was closed in April 2007.

**State Court Litigation**

After the Second Chapter 13 closed, La Jolla refused to reconvey the deed of trust against the Restaurant without payment of additional money.  Specifically, La Jolla demanded payment for unpaid principal, post-confirmation interest, late payment penalties, advances for insurance, foreclosure fees and costs, and attorney's fees and costs in the approximate sum of $24,000.  When Mr. Eickerman refused to pay the additional sum, La Jolla recorded a notice of default and commenced foreclosure proceedings against the Restaurant in July 2007.

Mr. Eickerman responded by filing a civil action against La Jolla in state court seeking to enjoin the foreclosure commenced by La Jolla, an accounting, and the reconveyance of the deed of trust ("DOT").  In November 2007, Mr. Eickerman formally requested a reconveyance of the DOT from La Jolla.  Mr. Eickerman succeeded in obtaining a preliminary injunction to stop the foreclosure and the state court action was set for trial.  Six days before trial, Mr. Eickerman filed another bankruptcy petition.  The trial date was dropped from the state court's calendar.  The current state of the state court litigation is unclear.

**Third Chapter 13 Action**

As set forth above, Mr. Eickerman filed his Third Chapter 13 six days before the state court action was set to go to trial, in March 2009.  Michael Meyer ("Mr. Meyer") was appointed as the Chapter 13 trustee.  In July 2009, Mr. Eickerman initiated an adversary proceeding against La Jolla ("First Adversary Proceeding"), in which he sought, inter alia, a determination that La Jolla's claim had been satisfied in full and that La Jolla was violating the discharge injunction from the Section Chapter 13.  La Jolla responded to the First Adversary Proceeding and filed an objection to confirmation of the Third Chapter 13 plan.

Mr. Eickerman was unable to confirm a plan in the Third Chapter 13 Action because the bankruptcy court found that the Third Chapter 13 was not filed for the purpose of reorganization.  The court further found that Mr. Eickerman's dispute with La Jolla should be litigated in either the Second Chapter 13 or the state court action.  Mr. Meyer moved to dismiss the Third Chapter 13 for, inter alia, unreasonable delay.  Mr. Eickerman did not oppose the motion to dismiss.  The Third Chapter 13 was dismissed in September 2009.

**Reopened Second Chapter 13 Action**

In November 2009, after the Third Chapter 13 was dismissed, Mr. Eickerman moved to reopen the Second Chapter 13. In so moving, Mr. Eickerman sought to resolve his dispute with La Jolla. One reopened, Mr. Eickerman filed this adversary proceeding on December 22, 2009 ("second adversary proceeding").

**Fourth Chapter 13 Action**

In September 2000, Mr. Eickerman and his wife filed another petition under chapter 13 ("Fourth Chapter 13") to stay foreclosure until Mr. Eickerman's dispute with La Jolla could be resolved in the second adversary proceeding initiated in the reopened Second Chapter 13 Action. Mr. Meyer was appointing as the standing trustee again. La Jolla filed a proof of claim in the Fourth Chapter 13, asserting a new secured claim of $79,714.59. This amount included unpaid principal, accrued interest, late charges, foreclosure fees and costs and attorneys' fees and costs. The total claim amount included fees and costs accrued as of January 10, 2011.

Mr. Eickerman filed an amended plan in the Fourth Chapter 13, proposing to pay La Jolla's new secured claim in the disputed amount of $25,000. Mr. Meyer and La Jolla objected to confirmation. Before the confirmation dispute could be resolved, Mr. Meyer moved to dismiss the Fourth Chapter 13 or to convert it to a Chapter 7. The issue in that action was whether La Jolla had a right to assert a claim against Mr. Eickerman after the conclusion of the Second Chapter 13 Action. The bankruptcy court stayed the Fourth Chapter 13 pending resolution of the parties' cross-summary judgment motions in the second adversary proceeding.

**Summary Judgment Order**

The second adversary proceeding in the reopened Section Chapter 13 Action was resolved on March 22, 2012, when the bankruptcy court issued its summary judgment order ("MSJ Order") on the parties' cross-summary judgment motions. In that order, the bankruptcy court considered whether Mr. Eickerman's obligation to La Jolla under the Note and DOT was satisfied in full upon completion of the Plan and entry of Eickerman's discharge in the Second Chapter 13. If the bankruptcy court were to determine that Mr. Eickerman's obligations were not satisfied fully, then the bankruptcy court was called upon to consider the nature of the remaining claim and how much Mr. Eickerman still owed La Jolla.

1    As to the first issue, the bankruptcy court concluded as follows:

2        When Eickerman defaulted on his obligation to make timely Plan payments on his other
         obligations under the Note and DOT, [La Jolla] had the right to recover any applicable
3        Fees and Expenses.  As a result, completion of the Plan and entry of Eickerman's
         discharge did not represent full satisfaction of Eickerman's obligation to [La Jolla].  The
4        discharge released Eickerman from any personal liability to [La Jolla] on account of the
         debts "provided for" by the Plan, including the debts arising from pre-confirmation Fees
5        and Expenses.  However, [La Jolla] still holds a secured claim for any post-confirmation
         Fees and Expenses that it may recover pursuant to the terms of the Note and DOT, and
6        that claim continues to be secured by Restaurant...Therefore, [La Jolla] is entitled, as a
         matter of law, to assert a claim based on its post-confirmation Fees and Expenses in
7        Eickerman's Fourth Chapter 13.

8    MSJ Order, pp. 33-34.  In finding that the Plan did not discharge post-confirmation Fees and Expenses,

9    the court noted that although the Plan addressed La Jolla's Proof of Claim in the amount of $72,500, the

10   Plan remained silent about whether La Jolla would maintain any of its other contractual rights, including

11   its right to recover post-petition Fees and Expenses provided by the Note and DOT.   Under these

12   circumstances, the bankruptcy court considered the question presented as follows: "[I]n the absence of

13   the Plan's explicit modification of some rights embodied in the Note and DOT, did those rights survive

14   confirmation?  Or did the Plan superceded all rights arising from the contract documents, limiting [La

15   Jolla] to only rights affirmatively mentioned in the Plan?" MSJ Order, p. 16.

16       In answering this question, the bankruptcy court noted that although some courts treat confirmed

17   plans as entirely replacing the parties' pre-petition contracts and rights therein, the Ninth Circuit

18   "focuses on the secured creditor's due process rights and has adopted an approach that considers the

19   sufficiency of notice and the totality of the circumstances." MSJ Order, p. 17 (citing *In re Shook*, 278

20   B.R. 815, 824-25 (9th Cir. BAP 2002) ("Due Process is the linchpin to determining the rights of secured

21   creditors in chapter 13.")).   The court further noted that with due process in mind, the Ninth Circuit

22   construed ambiguities in a plan against the debtor-drafter." MSJ Order, p. 17 (citing *In re Brawders*,

23   325 B.R. 405, 411 (9th Cir. BAP 2005), *aff'd sub nom. Brawders v. Cnty of Ventura*, 503 F.3d 856 (9th

24   Cir. 2007) (adopting the BAP's decision in its entirety).  Considering these principles of due process and

25   the circumstances of the case, the bankruptcy court found that the Plan did not modify or eliminate La

26   Jolla's contractual right to recover post-confirmation Fees and Expenses, given that the Plan's complete

27   failure to mention such rights and its lack of an integration or merger clause. MSJ Order, p. 17.

28       The bankruptcy court found the Fees and Expenses were not "provided for" under the Plan.

Because they were not "provided for," the Plan did not explicitly modify La Jolla's contractual rights as to Fees and Expenses. Instead, those rights were left unaffected by the Plan. *See* 11 U.S.C. §1322(b)(2) (debtor may "modify the rights of holders of secured claims...or leave unaffected the rights of holders of any claim of claims" in his plan.

After determining that La Jolla retained its rights to assess post-petition Fees and Expenses against Mr. Eickerman, the bankruptcy court then considered how those rights were affected by the discharge. Noting that the debt in a Chapter 13 depends on whether the plan provides for a particular claim, the court considered the scope of the claim provided for in the Plan. The court found that the Plan provided for the claim amount of $72,500, which was the matured, outstanding debt owed to La Jolla on the petition date. The court noted, however, that claims are not limited to mature debts, but cover even contingent claims. *In re Fostvedt*, 823 F.3d 305, 306 (9th Cir. 1987) (a "claim" for bankruptcy purposes will even including a contingent claim, meaning "one which the debtor will be called upon to pay only upon the occurrence of a happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor."). MSJ Order, p. 22. Based on this authority, the bankruptcy court concluded that the Plan "provided for' both the mature debt outstanding on the petition date as well as the Fees and Expenses that accrued between the petition date and the confirmation date.

The court distinguished between pre- and post-confirmation Fees and Expenses, reasoning that "when the Plan was confirmed the parties should have contemplated the existence of pre-confirmation Fees and Expenses, since by that time, the contingency events (i.e., Eickerman's defaults of his contractual obligations) had already happened." MSJ Order, p. 23. Since La Jolla was aware of the pre-confirmation Fees and Expenses at the time of confirmation, La Jolla should have filed an amended proof of claim before confirmation. Because nothing barred La Jolla from adding its pre-confirmation Fees and Expenses to an amended proof, and because La Jolla had notice of those new Fees and Expenses, the bankruptcy court concluded that the Plan "provided for" pre-confirmation Fees and Expenses.

Following this reasoning, the bankruptcy court found that the Plan did not provide for post-confirmation Fees and Expenses. The bankruptcy court reasoned:

Unlike [La Jolla's] pre-confirmation Fees and Expenses, the right to recover post-

confirmation Fees and Expenses were still contingent at the time of confirmation.  At that time, Eickerman had not committed any post-confirmation defaults.  The parties could not have fairly contemplated the Plan to "provide for" post-confirmation Fees and Expenses that had not yet become due and owing.  And, at the time of confirmation, there was even a possibility, indeed an expectation, that post-confirmation Fees and Expenses would never materialize during the Plan's term as Eickerman should have performed the Plan without defaulting...Even assuming they would accrue, the Plan could not adequately estimate and provide for such contingent future sums.  The Plan therefore could not have "provided for" [La Jolla's] post-confirmation Fees and Expenses.

MSJ Order, p. 25.

Having concluded that La Jolla retained a claim against Mr. Eickerman based on its post-confirmation Fees and Expenses, the court concluded that La Jolla may assert that right in the Fourth Chapter 13 Action.  The court noted that the amount of that claim was a factual matter that could only be decided after an evidentiary hearing either through a claim objection in the Fourth Chapter 13 or in the state court action.  Mr. Eickerman appeals from the MSJ Order.

Issues Presented

Mr. Eickerman presents the following issues on appeal:

1.      Did the lower court commit reversible error by granting summary judgment in favor of La Jolla by relying on the holding in *In re Shook*, 278 B.R. 815, 824-25 (9th Cir. BAP 2005) and *In re Brawders*, 503 F.3d 856 (9th Cir. 2007) to the effect that La Jolla's due process rights were violated?

2.      Whether the standard form of Chapter 13 plan approved by and promulgated in General Order 01-02 (March 1, 2001) by the Eastern District of California is so unconstitutionally vague and unambiguous such that the due process rights of La Jolla were violated in that its claim was not "provided for" in the plan?

3.      Whether the confirmed Chapter 13 plan and the principle of res judicata binds La Jolla and the debtor to a new contract and modifies the rights of the parties which must be interpreted according to the rules governing the interpretation of contracts.

4.      Whether La Jolla's post-petition interest, late fees, attorneys fees and expenses were provided for under the plan, and if not, did [it] waive [its] rights under 11 U.S.C. §506(b) by not amending [its] claim and remaining silent until after the case was closed.

1        5.         Whether La Jolla was entitled to post-confirmation attorneys fees and expenses as a

2        matter of law because it was not the "prevailing party" to litigation in the lower court.[2]

3        La Jolla presents the following issue on appeal: Whether payment of the amount stated in La

4    Jolla's Proof of Claim, provided for by the Second Amended Plan, constituted a satisfaction of the debt

5    owed by Eickerman to [La Jolla] as a matter of law.

6                            **STANDARDS OF REVIEW**

7        A district court reviews the bankruptcy court's grant of a summary judgment de novo and applies

8    the standards of review for a Fed. R. Civ. P. 56 motion. *See, Prison Legal News v. Lehman*, 397 F.3d

9    692, 698 (9th Cir 2005); *see also, In re Nash*, 765 F.2d 1410, 1413 (1995) (superceded on other grounds

10   by statute) ("The bankruptcy court's grant of summary judgment, affirmed by the district court, is subject

11   to de novo review."); *In re Optical Techs., Inc.*, 246 F.3d 1332, 1335 (11th Cir. 2001) (both district court

12   and appellate court review bankruptcy court's summary judgment order de novo and apply Fed. R. Civ.

13   P. 56 standards). Summary judgment is appropriate when the movant shows "there is no genuine dispute

14   as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

15   *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *T.W. Elec. Serv., Inc. v.*

16   *Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). As the bankruptcy court noted, the

17   parties present no material factual disputes related to the underlying legal issue of whether Mr.

18   Eickerman's obligation to La Jolla under the Note and DOT was satisfied in full upon completion of the

19   Plan and entry of Eickerman's discharge in the Second Chapter 13 or whether La Jolla retained

20   contractual rights not provided for under the Plan.

21        Interpretation of the contractual terms of a Chapter 13 plan is generally a factual issue that is

22   reviewed for clear error. *In re Yet*, 306 B.R. 287, 290 (9th Cir. BAP 2004). Whether a contract is

23   ambiguous is a matter of law that is reviewed de novo. *In re Brawders*, 325 B.R. at 410. The court

24

---

25           [2]Although Mr. Eickerman designated 13 issues in two separate Statements of Issue on Appeal, his opening brief is
limited to these issues presented. Some of the issues presented condense some of the 13 issues originally designated. La

26   Jolla argues that Mr. Eickerman has waived those issues not addressed in his opening brief on appeal. Mr. Eickerman objects
this argument, though the reasons for the objection are unclear. To the extent that Mr. Eickerman's issues are not addressed

27   in his opening brief, Mr. Eickerman has abandoned those issues on appeal. *Alioto v. Cowles Comm. Inc.*, 623 F.3d 616, 618
(9th Cir. 1980). To the extent that some of these "condensed" issues raise new issues that were not designated, those issues

28   are waived. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

1  reviews "de novo the res judicata effect of a Chapter 13 plan and interpretation of the Bankruptcy Code

2  and Rules, because these matters are legal issues or mixed questions of law and fact in which legal issues

3  predominate." *Id.* (citing *In re George*, 318 B.R. 729, 732-33 (9th Cir. BAP 2004)).  Whether adequate

4  notice has been given for purposes of due process in a particular instance is a mixed question of law and

5  fact that is reviewed de novo. *In re Repp*, 307 B.R. 144, 148 (9th Cir. BAP 2004).

6                                              DISCUSSION

7  **I.       Whether this Court lacks jurisdiction over this appeal**

8        As an initial matter, this Court must address La Jolla's challenge to the jurisdiction of this appeal.

9  La Jolla submits that this Court lacks jurisdiction over this appeal because Mr. Eickerman's notice of

10  appeal was defective.  Pursuant to Fed. R. Bank. P. 8001, "notice of appeal shall (1) conform

11  substantially to the appropriate Official Form, (2) contain the names of all parties to the judgment, order,

12  or decree appealed from and the names, addresses, and telephone numbers of their respective attorneys,

13  and (3) be accompanied by the prescribed fee."  La Jolla points out that the notice of appeal filed by Mr.

14  Eickerman does not contain the names of the parties to the judgment or order and fails to state the name,

15  address, and telephone number of the attorney for the unnamed party.  La Jolla submits that this Court

16  lacks jurisdiction over this appeal based on these defects.  To support this position, La Jolla cites the

17  unpublished district court opinion of *In re Personal Electric Transports, Inc*., 2007 U.S. Dist. LEXIS

18  46016 (D. Haw. 2007).

19        This Court is not persuaded that Mr. Eickerman's failure to comply literally with Fed. R. Bank.

20  P. 8001 affects this Court's jurisdiction.  Indeed, a party's "failure to complete, literal conformity to Rule

21  8001(a) and its incorporated Official Bankruptcy Form 17 should not be thought a *jurisdictional defect*,

22  and hence unforgivable." *Fadayiro v. Ameriquest Mort. Co.*, 371 F.3d 920, 922 (7th Cir. 2004) (Posner,

23  CJ) (emphasis in original).  As forth above, the rule itself requires the appellant to "conform

24  substantially" to the official form.  Fed. R. Bank. P. 8001(a).  The rule does not require "strict and literal

25  compliance...in the sense that a failure to comply, however innocuous, spells doom for the appeal."

26  *Fadayiro*, 371 F.3d at 922.  Substantial compliance refers to "information rather than to format." *Id.* at

27  923.  In this case, Mr. Eickerman did provide the required information in his pleadings and elsewhere,

28  if not on the official form.  La Jolla had notice that it was the appellee in this proceeding, particularly

                                                 11

1    since it was the only adverse party in the second adverse proceeding.  For these reasons, Mr. Eickerman

2    substantially complied with Fed. R. Bank. P. 8001.  In addition, his failure to conform literally to the

3    rule's requirements does not affect this Court's jurisdiction over this appeal.  Accordingly, this Court

4    rejects La Jolla's argument that this Court lacks jurisdiction over this appeal based on Mr. Eickerman

5    defective notice of appeal.

6    **II.     Whether La Jolla's post-petition interest, late fees, attorneys fees and expenses were provided for under the plan[3]**

7

8         Mr. Eickerman's fourth issue on appeal, and La Jolla's sole issue on appeal (though formulated

9    differently) presents the threshold inquiry as to whether La Jolla's post-petition Fees and Expenses were

10   provided for under the Plan.  Although designating this as a separate issue, Mr. Eickerman does not

11   address it separately in his opening brief.  It appears that Mr. Eickerman's discussion of the other issues

12   present his challenges to the bankruptcy court's conclusion that La Jolla's post-confirmation Fees and

13   Expenses were not provided for under the Plan.  Nevertheless, because this was the main holding of the

14   MSJ Order, it is important for this Court to address this issue initially.  For the following reasons, this

15   Court agrees with and adopts the bankruptcy court's well-reasoned opinion that La Jolla's post-

16   confirmation Fees and Expenses were not provided for under the Plan.

17        In a chapter 13 action, a debtor may "modify the rights of holders of secured claims...or leave

18   unaffected the rights of holders of any class of claims" in the debtor's plan. 11 U.S.C. §1322.  Although

19   the language of the statute is in the disjunctive, the debtor may choose to both modify the rights of

20   holders of secured liens and leave unaffected other rights.  *See* 11 U.S.C. §102(5) (providing that the

21   statutory term "or" is not [meant to be] exclusive").  The "rights" that may be either modified or left

22   unaffected by the debtor include rights "reflected in the relevant mortgage instruments, which are

23   enforceable under [state] law." *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 329-30 (1993) (mentioning

24   various rights arising from mortgage instruments that are subject to this provision, including the right

25   to monthly payments of principle with interest and the right to retain a lien until the debt is paid off).

26

27   [3]Mr. Eickerman's full designation of the issue reads as follows:  Whether La Jolla's post-petition interest, late fees, attorneys fees and expenses were provided for under the plan, and if not, did [it] waive [its] rights under 11 U.S.C. §506(b) by not amending [its] claim and remaining silent until after the case was closed.  Because Mr. Eickerman failed to address

28   the issue of waiver in his opening brief, however, this Court does not address that issue in this opinion.

1   The Chapter 13 plan is a binding contract between the debtor and the debtor's creditors. *In re*

2   *Than*, 215 B.R. 430, 435 (9th Cir. BAP 1997).  Pursuant to 11 U.S.C. §1327, "except as otherwise

3   *provided in the plan* or the order confirming the plan, the confirmation of a plan vests all of the property

4   of the estate in the debtor" and "the property of the estate of the debtor...is free and clear of any claim

5   or interest of any creditor *provided for by the plan*." 111 U.S.C. §§1327(b), (c) (emphasis added).  Thus,

6   under bankruptcy law, a debtor is granted a discharge "for all debts *provided for by the plan* or

7   disallowed under §502 of this title." 11 U.S.C. §1328(a) (emphasis added).]

8   The parties dispute whether the post-petition Fees and Expenses incurred by La Jolla due to Mr.

9   Eickerman's numerous defaults were "provided for in the plan."  The phrase "provided for in the plan"

10  means that the plan "'makes a provision for,' 'deals with,' or even 'refers to' a claim." *Rake v. Wade*,

11  508 U.S. 464, 474 (1993) (citations omitted).  Undisputedly, the Plan provided for the La Jolla's Clam

12  of Proof in the amount of $72,500, which included the fully-matured amount owed to La Jolla at the time

13  of the petition.  The Plan was silent, however, as to whether La Jolla retained its right to recover post-

14  petition Fees and Expenses as provided by the Note and DOT.  Because the Plan was silent as to these

15  contractual rights, the question presented is: Did the Plan "make a provision for, deal with or refer to"

16  the contractual provisions between the parties that were not explicitly mentioned in the Plan.  That is,

17  could the Plan have modified the rights of certain terms of the Note and Dot while leaving unaffected

18  other provisions of the Note and DOT that were not provided for, dealt with, or referred to in the Plan.

19  As the bankruptcy court noted and Mr. Eickerman points out, some courts treat a confirmed plan

20  as entirely replacing the parties' pre-petition contracts and rights therein.  *See, e.g., In re Wellman*, 322

21  B.R. 298, 301 (6th Cir. BAP 2004) ("Once a plan is confirmed, it is treated as the exclusive and

22  transcendent relationship between the debtor and the creditor); *In re Talbot*, 124 F.3d 1201, 1209 (10th

23  Cir. 1997) ([B]ecause creditors are limited to those rights that they are afforded by the plan, they may

24  not take actions to collect debts that are inconsistent with the method of payment provided for in the

25  plan.").  Under this rule of law, the plan would replace the Note and DOT.  Thus, no provisions of the

26  pre-petition contract would survive after confirmation, and La Jolla would be unable to enforce any

27  provisions of the contract after plan confirmation.

28  The Ninth Circuit takes a different approach that considers a creditor's due process rights and

the circumstances of each action. *In re Shook*, 278 B.R. at 824, 25.  According to this "middle of the road approach," "[d]ue process is the linchpin to determining the rights of secured creditors in chapter 13." *Id.*  Under this approach, courts consider whether the creditor had adequate notice that rights would be affected or modified by the plan.  *See Enewally*, 368 F.3d at 1173.  In addition, courts consider whether the secured creditor had a procedure by which to enforce the rights affected or modified or object to the way that they will be affected or modified.  *Id.*; *see also*, *In re Brawders*, 325 B.R. at 411.  In addition to these considerations, ambiguities in the plan are construed against the debtor/drafter. *Id.*  And the debtor asserting res judicata "has the burden of proof on all elements and bears the risk of non-persuasion." *In re Repp*, 307 B.R. at 148 n.3.

Applying these principles to the circumstances of this action, this Court considers whether the post-petition Fees and Expenses were "provided for" in the plan.  Because the contractual provisions of the Fees and Expenses were not expressly written into the plan or noted in the plan, Proof of Claim or form, the Plan did not "make a provision for, deal with or refer to" these contractual provisions.  Accordingly, this Court finds that those contractual provisions were not "provided for" by the Plan.

Taking a less literal approach, the Court could construe the silence as an ambiguity in the Plan as to whether it "provides for" post-petition Fees and Expenses.  As set forth above, ambiguities in the plan are construed against Mr. Eickerman.  In addition,

> a plan should clearly state its intended effect on a given issue.  Where it fails to do so it may have no res judicata effect for a variety of reasons: any ambiguity is interpreted against the debtor, any ambiguity may also reflect that the court that originally confirmed the plan did not make a final determination of the matter at issue, and claim preclusion generally does not apply to a "claim" that was not within the parties' expectations of what was being litigated, nor where it would be plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme.

*In re Brawders*, 325 B.R. at 411.  Here, this Court finds that because the Plan was silent as to the post-petition Fees and Expenses, the ambiguity is construed to mean that the parties did not contemplate inclusion of those contractual provisions in the Plan.  Thus, the Plan included no final determination on those provisions.  Accordingly, post-petition Fees and Expenses were not provided for strictly in the Plan.

The Court notes that the parties may be bound even by those claims that were not provided for in the plan if they could have been contemplated by the parties prior to confirmation.  "[P]rovisions of

a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. §1327.  This broader language refers to the fact that the plan confirmation binds the parties to issues pertaining to the plan that either were or could have been raised prior to confirmation. *See In re Enewally*, 368 F.3d 1165, 1172 (9th Cir. 2004).  Thus, if a creditor fails to object to a plan or appeal a confirmation order, "it cannot later complain about a certain provision contained in a confirmed plan, even if such a provision is inconsistent with the Code." *In re Pardee,* 193 F.3d 1083, 1086 (9th Cir. 1999).  Although this language is broad and "although a secured creditor is bound by the plan, this does not mean that a debtor can void or otherwise extinguish a creditor's lien without addressing the lien in the plan." *In re Shook*, 278 B.R. at 824.  Moreover, the Court applies the principles of due process to consider whether the parties could have raised the issue prior to confirmation.

Here, the Court agrees with the bankruptcy court to conclude that issues related to the post-petition but pre-confirmation Fees and Expenses could have been raised prior to confirmation by La Jolla.  Between the petition and confirmation, Mr. Eickerman had defaulted a number of times causing La Jolla to incur expenses.  Those Fees and Expenses had matured, La Jolla had clear notice of those Fees and Expenses related to those defaults, and La Jolla had a procedure by which to enforce its contractual rights related to those Fees and Expenses; namely, La Jolla could have filed an adversary action or objected to the confirmation.  Considering these due process principles, and because issues related to these Fees and Expenses could have been raised prior to confirmation, this Court agrees that the Plan confirmation binds the parties as to these Fees and Expenses and has a res judicata effect as to those Fees and Expenses.

Considerations of due process, however, require different result as to post-confirmation Fees and Expenses.  Although Mr. Eickerman had a history of defaulting, there was an expectation that he would comply with the Plan after confirmation.  La Jolla had no adequate notice that it would incur fees related to the defaults until Mr. Eickerman defaulted.  Moreover, La Jolla had no adequate pre-confirmation procedure that would have been able to provide or, or estimate, the Fees and Expenses related to post-confirmation Fees and Expenses, if any.  Accordingly, this Court finds that La Jolla's post-confirmation Fees and Expenses were not "provided for" in the Plan.

1    **III.    Whether the bankruptcy court committed reversible error by relying on *In re Shook*, 278**
2         **B.R. 815, 824-25 (9th Cir. BAP 2005) and *In re Brawders*, 503 F.3d 856 (9th Cir. 2007)**

3         Mr. Eickerman argues that the bankruptcy court committed reversible error by relying on *In re*

4    *Shook* and *In re Brawders*.  Mr. Eickerman criticizes the bankruptcy court for failing to adopt out-of-

5    circuit, non-binding authority that conflicts with Ninth Circuit legal authority on the same issue.

6    Acknowledging that the bankruptcy court noted that other circuits treat a confirmed plan as entirely

7    replacing the parties' pre-petition contract and rights therein, Mr. Eickerman argues that the court

8    "justified ignoring those cases by asserting that in the Ninth Circuit a different approach is taken,

9    focusing on the due process rights possessed by a secured creditor." Appellant Opening Brief, p. 9.  Mr.

10   Eickerman concludes that the bankruptcy court erred in applying the approach of *In re Shook* and *In re*

11   *Brawders*, because they are legally and factually distinct.   Mr. Eickerman's position is unavailing.

12        The bankruptcy court appropriately applied the applicable legal authority in this circuit.  The out-

13   of-circuit case law cited by and relied on by Mr. Eickerman is non-binding in this circuit.  *Farrakhan*

14   *v. Gregoire*, 590 F.3d 989, 1000 (9th Cir. 2010) ("Out-of-circuit cases are not binding on this Court and

15   therefore do not constitute 'controlling authority.'"), *overruled on other grounds*, 623 F.3d 990 (9th Cir.

16   2010)(en banc).  Indeed, the bankruptcy court has a duty to apply binding authority of its circuit.  It could

17   not rely on the out-of-circuit cases, particularly to the extent that they conflict with the approach taken

18   in this circuit.  The Ninth Circuit "middle of the road" approach is expressed in *In re Shook* and *In re*

19   *Brawders*, as correctly noted by the bankruptcy court in its MSJ Order.  This approach "focuses on the

20   sufficiency of notice and considers the totality of the circumstances." *In re Shook*, 278 B.R. at 824.  Even

21   Mr. Eickerman recognizes that the legal authority of these cases is on point, as he characterizes the

22   holdings of these cases as follows: "Both *Shook* and *Brawders* concern the due process rights of a

23   secured creditor and whether a Chapter 13 plan comports with due process to bind that secured creditor

24   to the Appellant's plan." Opening Brief, p. 9.  That is precisely the legal issue in this action.

25   Accordingly, Mr. Eickerman's attempts to distinguish these cases legally are unpersuasive.

26        Similarly, Mr. Eickerman's attempts to distinguish this action factually from *In re Shook* and *In*

27   *re Brawders* are inapposite.   Although the factual circumstances in those cases are factually

28   distinguishable from the case at bar, the bankruptcy court did not rely on those cases to draw factual

1    similarities.   Rather, the bankruptcy court cites those cases for the legal concepts.   The factual

2    distinctions do not negate the applicability of the legal authority to this action.

3         Mr. Eickerman also argues that the court used the "incorrect standard to determine" whether La

4    Jolla had been accorded notice due to the terms of the Plan because *In re Shook* "ignore[s] controlling

5    Ninth Circuit precedent[.]"  Opening Brief, p. 14.  Mr. Eickerman argues that it is "shocking that *Shook*

6    would have formulated its own standard of plan" in light of *In re Enewally*, 368 F.3d 1165, 1173 (9th

7    Cir. 2004).   Mr. Eickerman argues that contrary to the language of the *Shook* decision, a claim's

8    treatment need not be "explicit" to be provided for under the plan.  A claim's treatment need only be

9    adequate.  *In re Enewally*, 368 F.3d at 1173.  Mr. Eickerman submits that to the extent that *In re Shook*

10   is inconsistent with *Enewally*, it should be disregarded and rejected by the court.

11        This Court finds that the bankruptcy court applied the correct standard. The bankruptcy court did

12   not require "explicit" notice, as suggested by Mr. Eickerman.[4]  Rather, the court considered the adequacy

13   of the notice, finding that a "plan provision affirmatively eliminating these rights would have provided

14   the creditor with the *most adequate notice* that the plan would be modifying or affecting the creditor's

15   rights." MSJ Order, pp. 17-18 (emphasis added).   The bankruptcy court concluded that the absence of

16   modification language provided inadequate notice because without that language, La Jolla "was not

17   afforded notice that its right to recover Fees and Expenses was being abrogated." *Id.* at 18.  This is a

18   reasonable interpretation of what type of notice would be adequate, or inadequate, under the

19   circumstances of this case.

20        Moreover, the bankruptcy court's opinion is consistent with *In re Enewally*.  The *Enewally* court

21   explained:

22        Although confirmed plans are res judicata to issues therein, the confirmed plan has no
23        preclusive effect on issues that must be brought by an adversary proceeding, or were not
          sufficiently evidenced in a plan to provide adequate notice to the creditor.   In other
          words, if Chapter 13 plan provisions do not adequately identify a secured creditor's
24        modified claims, to hold that the plan modified the claim "would be to allow lien

25

---

26        [4]The stronger language in *In re Shook* may be applicable to liens, rather than in personam claims, since bankruptcy
     extinguishes in personam claims against the debtor but generally has no effect on in rem claims against the debtor's property.
27   See Johnson v. Home State Bank, 501 U.S. 78, 84 (1991).  Thus, "a secured creditor may bypass a debtor's bankruptcy
     proceedings and enforce its lien in the usual way, because unchallenged liens pass through bankruptcy unaffected." *In re
28   Shook*, 278 B.R. 815, 821 (9th Cir. BAP 2002).

1   stripping by ambush." *In re Henline*, 242 459, 465-66 (Bankr. D. Minn. 1999) (holding
2   that it would violate Fifth Amendment due process guarantee against taking of property
    to allow a petitioner to strip a lien when the secured creditor was not sufficiently
3   identified as "unsecured in the plan even though the debt was listed as unsecured in the
    petition).

4   368 F.3d at 1173.  This statement is consistent with *In re Shook* in that it recognizes the principle that

5   the court take the middle of the road approach to consider the due process  to the secured creditor

6   through the provision of adequate notice.

7        For the foregoing reasons, the bankruptcy court did not commit reversible error by applying *In*

8   *re Shook* and *In re Brawders*.

9   **IV.    Whether the standard form of Chapter 13 plan approved by and promulgated in General**
        **Order 01-02 (March 1, 2001) by the Eastern District of California is so unconstitutionally**
10       **vague and unambiguous such that the due process rights of La Jolla were violated in that**
        **its claim was not "provided for" in the plan.**
11

12       Mr. Eickerman's argument as to this issue is confusing.   After explaining in detail the chapter

13  13 plan form, what information was provided to La Jolla on the form, and what La Jolla included in the

14  form, Mr. Eickerman argues:

15       There is no due process violation.  Adequate notice was given to La Jolla.  Here, La
        Jolla's security interest terminated on entry of the Appellant's discharge.  The plan terms
16       are adequate to provide notice of La Jolla to its claim.  La Jolla participated in the
        Appellant's Chapter 13 proceeding, was given an opportunity to object to the trustee's
17       Preliminary Final Report and Accounting, received notice that the balance of its claim was
        zero ($00.00), but failed to object.  La Jolla accordingly waived its rights under 11 U.S.C.
18       506(b) by failing to object until after the plan was completed.

19  Opening Brief, p. 16.  This paragraph constitutes the entirely of Mr. Eickerman's argument.  He does not

20  address whether the Eastern District of California's form is "unconstitutionally vague or ambiguous."

21  He cites no case law to support his position related to due process.  Indeed, Mr. Eickerman cites to no

22  legal authority related to this issue.

23       Not only is Mr. Eickerman's argument legally inadequate, but it fails to distinguish among La

24  Jolla's claims.  There is no dispute that La Jolla had adequate due process related to its underlying claim

25  as of the time of the petition.  As discussed more fully above, this Court also finds that there was adequate

26  notice to La Jolla of its pre-confirmation Fees and Expenses, because La Jolla had an opportunity to

27  object to confirmation and to amend the plan to include those Fees and Expenses.  But Mr. Eickerman

28  fails to address the due process considerations related to La Jolla's post-confirmation Fees and Expenses,

even though the bankruptcy court's opinion included a lengthy discussion to distinguish that claim. Those Fees and Expenses are treated differently where, as here, the Plan is silent regarding those contractual provisions.  And as discussed more fully above, there was inadequate notice as to the post-confirmation Fees and Expenses, because the post-confirmation Fees and Expenses were not provided for in the Plan.  Thus, the Plan was not res judicata as to the post-confirmation Fees and Expenses.  To allow Mr. Eickerman to escape post-confirmation Fees and Expenses caused by his repeated failure to comply with the Plan would allow him to harm La Jolla financially by ambush.  As the bankruptcy court explained:

> If the court were to hold that the Plan did provide for post-confirmation Fees and Expenses, while failing to recognize any sort of supplemental remedy for Eickerman's defaults, then such a ruling would essentially allow Eickerman to disregard his contractual obligations without having to suffer any of the financial consequences normally associated with defaults.  Since this court has already concluded that the Plan left intact [La Jolla's] right to recover post-confirmation Fees and Expenses, then a ruling that does not require Eickerman to pay that additional debt would have the simultaneous effect of eliminating those rights.  Such a result would be inconsistent and inequitable.

MSJ Order, p. 26.  Accordingly, this Court rejects Mr. Eickerman's argument that there was no due process violation.

**V.    Whether the confirmed Chapter 13 plan and the principle of res judicata bind La Jolla and the debtor to a new contract and modifies the rights of the parties which must be interpreted according to the rules governing the interpretation of contracts.**

Mr. Eickerman's designated issue appears to suggest that the confirmed plan supercedes and replaces any pre-petition contracts between the parties.  As set forth above, however, that is not the law in this circuit.  This law in this circuit requires this Court to consider the circumstances of the dase and due process.  Within this section, Mr. Eickerman argues that the Plan had res judicata effect on La Jolla's claims because: (1) La Jolla was accorded all of the due process rights to which it was entitled; (2) the debtor's due process rights were violated by La Jolla's defectively prepared proof of claim; and (3) res judicata binds La Jolla to the Plan.

With respect to his first argument, Mr. Eickerman recycles arguments presented above; namely, that the bankruptcy court erroneously relied on *Shook* and *Brawders* without establishing that there was a due process violation and the Eastern District of California form provided all of the due process necessary with respect to all of La Jolla's claims against Mr. Eickerman.  For the reasons set forth above,

1  this Court rejects those arguments.

2         With respect to Mr. Eickerman's third argument, this Court has already addressed the binding

3  nature of the Plan.  As discussed more fully above, the Plan bound the parties to the issues and claims that

4  are "provided for" in the Plan.  Thus, the Plan undisputedly has a res judicata effect as to La Jolla's claims

5  for the underlying principle and claims set forth in the Proof of Claim.  The Plan also has a res judicata

6  effect on La Jolla's pre-confirmation Fees and Expenses.  But there are limitations to the res judicata

7  effect of plans, particularly when secured claims are involved.  For the reasons set forth above, this Court

8  concludes that the Plan has no res judicata effect on La Jolla's post-confirmation Fees and Expenses,

9  since they were not "provided for" in the Plan and based on considerations of due process for the secured

10 creditor and the circumstances of this action.

11        In his second argument, Mr. Eickerman asserts that his due process rights were violated because

12 La Jolla failed to indicate in the box provided on the form whether interest or attorneys fees were included

13 in the claim amount.  La Jolla indicated that the amount of the claim and amount of arrearage was

14 $72,500.00 in its Proof of Claim.  La Jolla never amended, supplemented, or corrected their Proof of

15 Claim, nor did it demand their post-confirmation Fees and Expenses until after Mr. Eickerman received

16 his discharge.  Mr. Eickerman argues that La Jolla failed to complete its Proof of Claim correctly by

17 failing to include the post-petition Fees and Expenses.

18        Mr. Eickerman does not explain how La Jolla could have included Fees and Expenses that were

19 incurred after confirmation of the Plan on a form that was filed prior to the confirmation.  Mr. Eickerman

20 is entitled to due process.  But due process does not require La Jolla to include future, contingent Fees

21 and Expenses on a form at a time when there were not contemplated by the parties.  Mr. Eickerman could

22 have avoided those Fees and Expenses by complying with the terms of the Plan and its confirmation.  Mr.

23 Eickerman's due process rights have been preserved through appropriate procedure.  That is, La Jolla has

24 given Mr. Eickerman notice of its purported rights to enforce the Fees and Expenses provisions of the

25 Note and DOT.  And Mr. Eickerman has had the ability to challenge La Jolla's claim in the state court

26 action, the Reopened Chapter 13 and the second adverse proceedings, and the Fourth Chapter 14.  In

27 reviewing the procedural history between the parties, there is no doubt that Mr. Eickerman has taken

28 advantage of his due process rights fully as it pertains to the claims between him and La Jolla.

**VI.     Whether La Jolla was entitled to post-confirmation attorneys fees and expenses as a matter of law because it was not the "prevailing party" to litigation in the lower court.**

To recover attorneys fees pursuant to 11 U.S.C. §506(b): (1) the claim must be an allowed secured claim; (2) the creditor must be oversecured; (3) the fees must be reasonable under the circumstances; and (4) the fees must be provided for under the agreement. *In re Kord*, 139 F.3d 684 (9th Cir. 1998).  When fees are provided for in the underlying agreement, and the creditor is oversecured, allowance of the attorneys' fees under §506(b) is generally mandatory. *In re Le Marquis Assocs.*, 81 B.R. 576, 578 (9th Cir. BAP 1987).  Mr. Eickerman does not dispute that La Jolla was an oversecured creditor.  On summary judgment, Mr. Eickerman argued that the attorneys fees incurred by La Jolla were unreasonable and La Jolla was not entitled to post-confirmation attorneys fees because it was not the prevailing party.  Mr. Eickerman argues that the bankruptcy court committed reversible error because it did not consider or rule on Mr. Eickerman's arguments in its MSJ Order.

Contrary to Mr. Eickerman's assertion, the bankruptcy court addressed the issue of attorneys' fees, but correctly chose not to adjudicate the issue on summary judgment because it:

> involves numerous questions of fact, such as when [La Jolla] incurred the additional fees and expenses (whether pre- or post-confirmation) and the reasonableness of [La Jolla's] expenses, such as attorneys' fees.  These questions cannot be decided without an evidentiary hearing.  Nowhere in the record is there an accounting of what [La Jolla] has been paid, how it applied those payments, or what additional fees and expenses it has applied to the Note.  For that reason, the court will address only the first and second issues here...If [La Jolla] still holds a claim against Eickerman, secured or unsecured, then the amount of that claim will have to be adjudicated in another proceeding, either in the Fourth Chapter 13 or in the state court.

MSJ Opinion, p. 11.  In its conclusion, the MSJ Order again addresses the issue, explaining that the "amount [of the post-confirmation Fees and Expenses] is subject to triable issues of material fact, which must be adjudicated through the claim objection process in the Fourth Chapter 13 or liquidated in the State Court Action." *Id*. at 34.  According to well-settled principles of summary judgment, a court cannot adjudicate an issue if there are disputed questions of material fact.  The issue of reasonableness contained issues of material fact that were disputed, as explained in the MSJ Order.  Because the attorneys' fees issue was to be adjudicated in a different forum, it is reasonable to expect that all issues related to the fees, including the reasonableness, the amount, and whether La Jolla was a prevailing party, should be decided together in the appropriate forum.  Accordingly, the bankruptcy court did not err when it adhered

1   to well-settled summary judgment principles and referred the disputed factual issue of attorneys' fees to

2   the appropriate forum and procedure.

3                              CONCLUSION AND ORDER

4           For the foregoing reasons, this Court AFFIRMS the bankruptcy court's MSJ Order.

5

6

7

8                         IT IS SO ORDERED.

9   Dated:    October 3, 2012                    /s/ Lawrence J. O'Neill
                                              UNITED STATES DISTRICT JUDGE
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                    22